UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MAXIIMUS PAYNE

                                Plaintiff

        - against -

NEW YORK CITY POLICE DEPARTMENT
and the CITY OF NEW YORK

                                Defendants
-------------------------------------------------------X

08  No.: 3993

COMPLAINT

SIFTON J

1.    Plaintiff, MAXIIMUS PAYNE, by and through his attorney, LAW OFFICE OF CRYSTAL

      BURDEN, P.C., asserts the following as and for a Complaint against the defendant, New

      York City Police Department and City of New York as follows:


2.    This action is brought to remedy violations grounded in discrimination in employment

      pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2e to 2000e

      et seq., amended in 1972, 1978 and by the Civil Rights Act of 1991, Publ. L. No. 102-166,

      and by the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d), and the Equal Pay Act of

      1963, 29 U.S.C. § 206(d), and to remedy violations of state common law based upon the

      pendent jurisdiction of this Court pursuant to United Mineworkers v. Gibbs, 38 U.S. 715

      (1966), and 28 U.S.C. § 1367.  Jurisdiction of the state law claims is founded upon the

      pendent or supplemental jurisdiction of the Court pursuant to Gibb, 38 U.S. 715 (1966), and

      28 U.S.C. § 1367); and to remedy violations of the New York State Human Rights Law, New

      York Executive Law Section 290 et seq. (McKinney 1994), New York Executive Order No.

      19 (May 31, 1983), and under the Local Laws of the City of New York, including without

limitation Administrative Code Sections 8-107(A) and 8-502; and to remedy damages caused by intentional infliction of emotional distress caused by the actions of the Defendant pursuant to, inter alia, state common law.

3.     Inductive and declaratory relief, compensatory and punitive damages, costs and attorney's fees and other appropriate legal and equitable relief are sought pursuant to Title VII, 42 U.S.C. Section 2000, et seq., and pursuant to 42 U.S.C. § 1981, and pursuant to New York State Human Rights Law, New York State Executive Law § 290 et seq., New York Executive Order No. 19 (May 31, 1983), and pursuant to the Local Laws of the City of New York Administrative Code Sections 8-107(A) and 8-502.

## JURISDICTION

4.     Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343.  Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983, and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law, i.e. State Executive Law § 290 et seq., New York Executive Order No. 19 (May 31, 1983), and other New York State and New York City laws, including, without limitation, Common Law and Civil Service law.

5.    The unlawful employment practices complained of herein occurred in and about the borough of Kings of New York City, which is within the judicial district of the United States District Court, Eastern District of New York, pursuant to § 706(f)(3) of Title VII, 42 U.S.C. § 20004-5(F)(3)., and under the New York State Human Rights Law, New York Executive Law § 290, et seq., and pursuant to the Local Laws of the City of New York, Administrative Code §§ 8-107 (A) and 8-502.

6.    Further, Plaintiff resides in the borough of Kings which is within the jurisdiction of the Eastern District of New York.

## PARTIES

7.    At all times hereinafter mentioned, upon information and belief, Plaintiff, MAXIIMUS PAYNE, is a male, a natural person, and a resident of New York, New York.

8.    Venue of this action lies in the Eastern District of New York pursuant to 42 U.S.C. § 20004-5(f) and 28 U.S.C. § 1391.

9.    At all times hereinafter mentioned, upon information and belief, Defendant, The New York City Police Department is an agency of the City of New York and located at One Police Plaza, New York, New York.

10.   The New York City Police Department is an employer within the meaning of 42 U.S.C. §
      2000(e) et seq.

11.   The address at which I sought employment or was employed by the defendant New York
      City Police Department is: One Police Plaza, New York, New York.

12.   Plaintiff has complied with the administrative prerequisites and the prerequisites to
      jurisdiction in this Court under Title VII, by filing a charge of discrimination with the Equal
      Employment Opportunity Commission ("EEOC") on February 29, 2008.  A copy of this
      charge is attached hereto as Exhibit "A" and made a part hereof.

13.   Jurisdiction of this Court is invoked under § 706(f) of Title VII, 42 U.S.C. § 2000e-5(f)(3).

## DISCRIMINATION

14.   The discriminatory conduct of which I complain in this action includes, inter alia:
      discrimination based upon my religion, hostile work place discrimination; discriminatory
      retaliation and discrimination based upon my ethnicity.

15.   It is my best recollection that the alleged discriminatory acts occurred in or about July, 2005
      to August, 2007.

4

16.    Defendant discriminated against me based on my: my religion and my ethnicity.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES:**

17.    On February 29, 2008, a charge was filed with the New York State Division of Human

Rights or the New York City Commission on Human Rights regarding the acts alleged herein

when I  filed my charge with the Equal Employment Opportunity Commission (the

"EEOC").

18.    I received a Notice of Right to Sue Letter from the U.S. Department of Justice on behalf of

the EEOC on or about July 1, 2008.  (See copy of Right to Sue Letter dated July 1, 2008,

annexed hereto as Exhibit "B" and made a part hereof.)

## **BACKGROUND**

19.    In or about July, 2005, the plaintiff, Maxiimus Payne joined the Police Academy.  Maxiimus

Payne finished at the tope of his class in the Police Academy.  Maxiimus Payne was assigned

to the 70 Precinct in Kings County, New York on or about July 11, 2005.

20.    Since Officer Payne was assigned to active duty, he was chided and criticized by supervising

officers because of his dreadlocked hair style.  Officer Payne was told that his hair style made

him  look  like  a  perpetrator  of  crimes  and  that  he  could  be  mistaken  for  a  criminal.

Specifically, Officer Payne had to endure the following comments from his commanding officers from April, 2005 to July, 2007:

"A.    <u>April, 2006 - 70 Precinct</u>

First encounter with the ICO. He said to another white officer, Oh look we have another Dread Locs Rasta soon the entire department will be nothing but criminals. They're hiring anybody these days.

B.    <u>June, 2006  - 70 Precinct</u>

Crossed path with ICO getting out of my car. He says how the hell you afford a car like that on your salary? You better not be selling drugs, I have my eyes on you.

C.    <u>July or August, 2006 - 70 Precinct</u>

Command Discipline received from ICO for parking legally on the same street of the 70 Precinct. All other officers are allowed to park there. He said it was his discretion according to NYPD Patrol guide 206-03 and suggested that I park my vehicle a few blocks away from the precinct.

D.    <u>Fall of 2006 - 70 Precinct</u>

Two (2) Command Disciplines issued to me by the ICO for missed court dates to which I was not officially notified to appear. He said maybe my dreads were too heavy and the weight may be restricting me from performing proficiently as a Police Officer.

E.    February or March 2007 - 71 Precinct

My first encounter with the Executive Officer Captain Shoulders.  He said to me sarcastically, so "let me guess, sell drugs and driving dollar vans wasn't working out for you so you, decided to join NYPD huh".  Try to keep it clean.

Encounter with the Platoon Commander Lieutenant Topash.  "They actually let you graduate with those things on your head?  What's next marijuana smoking in the precinct?"

F.    March or April, 2007 - 71 Precinct

During my lunch period I made a trip to my locker to retrieve some summons and discovered ketchup smeared all over my locker door.  I brought it to the attention of the PBA representative who said he would look into the matter.   There was no further action taken on my behalf.  I suspect the ketchup was placed on my locker by the other officers who were attempting to haze me.  I interpreted the ketchup as symbolizing my blood."

## COUNT 1
## DISCRIMINATION BASED UPON ETHNICITY

Plaintiff complains as to each and every defendant as follows:

21.    The plaintiff repeats, reiterates and re-alleges each and every paragraph "1" through "20" as with the same effect as if more fully  set forth herein with the same force.

22.   Upon information and belief, the plaintiff was subjected to racial discrimination by being assigned to less desirable work assignments than his peer police officers.

23.   Upon information and belief, the plaintiff was subjected to discrimination by being singled out for conduct infraction and receiving command disciplines for conduct that his peers would engage in routinely without reprimand.

24.   Upon information and belief, the plaintiff was subjected to discrimination by being singled out for his appearance and his style of dread locked hair.

25.   Upon information and belief, the plaintiff was discriminated against by being stereotyped and categorized by behavior patterns common to a specific ethnic group.

26.   Upon information and belief, the Police Department employees, servants and/or assigns subjected the plaintiff to the aforementioned incidents of discrimination and caused the work place to become hostile toward the plaintiff.

27.   Upon information and belief, because of Police Department employees' comments about plaintiff's being a criminal and/or perpetrator, a drug user and/or drug dealer, he was discriminated against.

28. Upon information and belief, the plaintiff was discriminated against in that he was terminated from the police force because of his ethnicity. As a result of the intentional acts complained of, the plaintiff will suffer the loss of career advancement, loss of salary, bonuses, benefits, and other compensation as well as pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**WHEREFORE**, plaintiff prays for a Judgment in his favor and against the defendant as follows:

(a)   That a finding entered the defendant intentionally discriminated and retaliated against plaintiff with malice and reckless indifference to plaintiff's federally protected rights in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000(3) - (3),  as Amended by the Civil Right Act of 1991.

(b)   That plaintiff be awarded $5,000,000.00 in punitive damages and $1,000,000.00 in compensation damages against the defendant.

(c)   That plaintiff be awarded reasonable attorney fees and cost.

(d)   That plaintiff be awarded pre-judgment interest.

(e)   That plaintiff be awarded such other relief as this Court may deem just and proper.

## COUNT II
## DISCRIMINATION BASED UPON PLAINTIFF'S PARTICIPATION
## IN THE RASTAFARIAN RELIGION

29.    The plaintiff repeats, reiterates and re-alleges the allegations set forth in paragraphs "1" through "28" herein with the same force and effect as if more fully set forth herein.

30.    Upon information and belief, at all times relevant, the plaintiff held himself out as a member of the Rastafarian Religion and engaged in conduct consistent with its religious practices.

31.    Upon information and belief, at all relevant times, the plaintiff did grow his hair into long dread locks strands of hair. That as a result of his dread locked hair, he was criticized and vilified by his supervising officers as being a "Rasta" and thus being a criminal and identifying with the criminals and perpetrators of crimes. l harassment educator to gain favor with the plaintiff.

32.    Upon information and belief, as a result of his dread locked hair, plaintiff was accused of engaging in marijuana use and/or selling and criminal behavior, including driving "dollar vans" in Brooklyn, New York.

33.    Plaintiff now suffers and will continue to suffer irreparable injury and monetary damages as a result of defendant's discrimination and unless and until this Court grants plaintiff's requested relief.

**WHEREFORE**, plaintiff respectfully requests that the Court grant him the following relief:

(a)     finding that defendant discriminated against plaintiff upon his participation in the Rastafarian Religion;

(b)     finding that plaintiff should be awarded wages, benefits and compensation lost due to defendant's acts of discrimination;

(c)     plaintiff be awarded $5 Million in punitive damages and $1 Million in compensation damages;

(d)     that plaintiff be awarded reasonable attorney fees and costs;

(e)     plaintiff be awarded pre-judgment interest;

(f)     that plaintiff be awarded such other further relief as to this Court may seem just and proper.

34.     Plaintiff demands a trial on all counts of this Complaint

**COUNT III**
**PLAINTIFF WAS SUBJECTED TO HOSTILE WORK ENVIRONMENT**

35.  Plaintiff repeats, reiterates and re-alleges paragraphs "1" through "34" with the same force and effect as if more fully set forth herein.

36.  Upon information and belief, the plaintiff was subjected to a hostile work environment by acts committed against him by his peers, such as placing posters of criminal on his locker with his surname scrawled above and ketchup over the poster to portray blood.

37.  Upon information and belief, the plaintiff experienced a hostile work environment by his command officers giving him work detail that included the plaintiff being placed in secluded and dangerous locations without backup officers or access to immediate assistance if needed.

38.  Upon information and belief, the plaintiff was routinely subjected to hostile and agitating comments from co-workers regarding his dread locked hair, his sympathy for detainees, his alleged marijuana use, his alleged state of illicit drugs, his alleged operation of illegal commercial passenger vans and other comments.

39.  As a result of the foregoing, the plaintiff was caused to suffer irreparable injury and loss of career advancement, loss of salary, bonuses, benefits, and other compensation, as well as pecuniary loss, emotional pain, suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

**WHEREFORE**, plaintiff prays for a Judgment in his favor against defendants as follows:

a)       that a finding be entered that the defendant intentionally discriminated against the plaintiff and caused the plaintiff to be subjected to a hostile work environment in violation of Tittle VII;

b)       that plaintiff be awarded all wages, benefits and compensation lost due to defendants' action and wrongfully terminating the plaintiff;

c)       the  plaintiff be awarded $5 Million in punitive damages and $1 Million in compensatory damages from the defendant,

d)       that plaintiff be awarded reasonable attorney's fees and costs;

e)       that plaintiff be awarded prejudgment interest; and

f)       that plaintiff be awarded such other relief as this Court may deem just and proper.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

40.     Plaintiff repeats, reiterates and realleges the allegations set forth in paragraphs "1" through "39" with the same force and effect as if more fully set forth herein.

41.    New York Police Department Supervisors and Officers continually, repeatedly and intentionally inflicted emotional distress upon the plaintiff by engaging in the activities as hereinabove set forth.  New York Police Department knew or should have known that the actions as set forth hereinabove would cause plaintiff emotional distress.  New York Police Department employees intended to cause plaintiff severe emotional distress and/or acted in reckless disregard that the afore-described actions would cause plaintiff injury.  New York Police Department and the City of New York are responsible for the actions of employees and supervisors by virtue of its dominion and control of its employees and supervisors.

42.    Defendants condoned, ratified, authorized and perpetuated the acts of employees and supervisors by failing to stop, correct, intervene or prevent the egregious behavior.

43.    The New York Police Department conduct as hereinabove alleged was the proximate cause of plaintiff's feelings of being demeaned, degraded, humiliated, embarrassed, anxiety ridden, physically ill, emotionally unstable.

**WHEREFORE,** plaintiff prays for a judgment in his favor and against defendants as follows:

(a)    that a finding be entered that defendants intentionally inflicted emotional distress upon plaintiff;

(b)      that New York Police Department be ordered to pay plaintiff compensatory damage

in the amount of $1,000,000.00; and


(c)      that New York Police Department be ordered to pay plaintiff punitive damages in the

amount of $1,000,000.00.


Dated: Brooklyn, New York
         September 30 , 2008


                                        Respectfully submitted,
                                        LAW OFFICE OF CRYSTAL BURDEN, P.C.


                                        By: Crystal Burden
                                        Attorney for Plaintiff
                                        26 Court Street, Ste. 2702
                                        Brooklyn, NY 11242
                                        (718) 625-6052

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MAXIIMUS PAYNE

                    Plaintiff

    - against -

NEW YORK CITY POLICE DEPARTMENT
and the CITY OF NEW YORK

                    Defendants
--------------------------------------------------------X

No.: TBA

AFFIDAVIT

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF KINGS    )

Maxiimus Payne being duly sworn, deposes and says:

1.   That I am the plaintiff in the above-captioned action.

2.   That I am familiar with the facts and circumstances of the within matter through personal involvement in the matter asserted.

3.   That I submit the instant affidavit in support of my complaint against the New York City Police Department and the City of New York.

## FACTS

4.  That I was employed with the New York City Police Department from on or about July 11, 2005 to on or about August, 2007. During my employment with the New York City Police Department, I was subjected to discriminatory acts, a hostile work environment and religious persecution. The details of some of the acts complained of are as follows, <u>to</u> <u>wit</u>:

"A.    <u>April, 2006 - 70 Precinct</u>

First encounter with the ICO. He said to another white officer, Oh look we have another Dread Locs Rasta soon the entire department will be nothing but criminals. They're hiring anybody these days.

B.    <u>June, 2006  - 70 Precinct</u>

Crossed path with ICO getting out of my car. He says how the hell you afford a car like that on your salary? You better not be selling drugs, I have my eyes on you.

C.    <u>July or August, 2006 - 70 Precinct</u>

Command Discipline received from ICO for parking legally on the same street of the 70 Precinct. All other officers are allowed to park there. He said it was his discretion according to NYPD Patrol guide 206-03 and suggested that I park my vehicle a few blocks away from the precinct.

D.    Fall of 2006 - 70 Precinct

Two (2) Command Disciplines issued to me by the ICO for missed court dates to which I was not officially notified to appear.  He said maybe my dreads were too heavy and the weight may be restricting me from performing proficiently as a Police Officer.

E.    February or March 2007 - 71 Precinct

My first encounter with the Executive Officer Captain Shoulders.  He said to me sarcastically, so "let me guess, sell drugs and driving dollar vans wasn't working out for you so you, decided to join NYPD huh".  Try to keep it clean.

Encounter with the Platoon Commander Lieutenant Topash.  "They actually let you graduate with those things on your head?  What's next marijuana smoking in the precinct?"

F.    March or April, 2007  - 71 Precinct

During my lunch period I made a trip to my locker to retrieve some summons and discovered ketchup smeared all over my locker door.  I brought it to the attention of the PBA representative who said he would look into the matter.   There was no further action taken on my behalf.  I suspect the ketchup was placed on my locker by the other officers who were attempting to haze me.  I interpreted the ketchup as symbolizing my blood."

5.    These allegations are just representative of the years of mistreatment I suffered while trying to fulfill my obligations as a New York City Police Officer.  I reserve the right to supplement

3

these allegations with additional detail and further incidents should it be required.

Dated: Brooklyn, New York
      September 30, 2008

 

                                                         _____
                                                          Maxiimus Payne

Sworn to before me
this 30ᵗʰ day of September ., 2008.

_____
Notary Public

CRYSTAL BURDEN
NOTARY PUBLIC, State of New York
No. 02BU50____
Qualified in Kings County
_____ 20 2009

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

This form is affected by the Privacy Act. See ~~Enclosed Privacy Act~~
Statement and other information before completing this form. **EEOC NYDO-CRTIU**

- [ ] FEPA
- [X] EEOC  520 2008 02334N

**New York State Division of Human Rights** and EEOC

*State or local Agency, if any*

Name *(Indicate Mr, Ms., Mrs.)*  Mr. MAXIMUS PAYNE  Date of Birth 02/26/78

Street Address 500 SAINT Johns Pl  City, State and ZIP Code Brooklyn NY 11238  APT one I

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

Name New York City Police Department  No. Employees, Members 35,000  Phone No. with Area Code N/A

Street Address One Police PLAZA  City, State and ZIP Code

Name

Street Address  1 Police  City, State and ZIP Code  Plaza

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

- [ ] RACE
- [ ] COLOR
- [ ] SEX
- [X] RELIGION
- [ ] NATIONAL ORIGIN
- [ ] RETALIATION
- [ ] AGE
- [ ] DISABILITY
- [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest

- [ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was targeted by white supervisors because of my dread lock hair and my religious beliefs as a Follower of The Rastafarian religion in violation of title VII

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

02/2/2008  
Date  Charging Party Signature

NOTARY – *When necessary for State or Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

EEOC Form 161 (2/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Maximus Payne**
**500 Saint Johns Place**
**Apt. 1**
**Brooklyn, NY 11238**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2008-02334 | **Donna M. Walcott**<br>**Senior Investigator** | **(212) 336-3679** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Spencer H. Lewis, Jr.,
Director

6/30/08
(Date Mailed)

cc: **Respondent**
NYC POLICE DEPARTMENT
Legal Bureau
T.P. Doepsner
Assistant Deputy Commissioner
One Police Plaza, Room 1406
New York, NY 10038